358 So.2d 1101 (1978)
Gerald DENT, a Minor by and through His Mother and Next Best Friend, Earline Dent, Earline Dent, Individually, and Laurenner Williams, Appellants,
v.
Anthony CASALE, Allstate Insurance Company and Leatherby Insurance Company, Appellees.
Nos. 77-77, 77-209.
District Court of Appeal of Florida, Third District.
April 18, 1978.
Rehearing Denied June 2, 1978.
Goodhart & Rosner, Greene & Cooper and Sharon L. Wolfe, Miami, for appellants.
*1102 Talburt, Kubicki & Bradley and Betsy E. Hartley and Robert J. Dickman, Miami, for appellees.
Before PEARSON, HUBBART and KEHOE, JJ.
PEARSON, Judge.
These appeals are from a final judgment for the defendants, entered pursuant to a directed verdict, and a cost judgment. The defendants moved for a directed verdict at the close of plaintiffs' case and again at the close of all the evidence. The court reserved ruling on the motions and the jury returned to report that it was deadlocked. Thereupon, the court directed the verdict for the defendants and this appeal followed.
Two questions are presented. First, may the court direct a verdict, pursuant to a reserved ruling on defendants' motion, after submission of the cause to the jury, following the jury's announcement of its inability to reach a verdict? Second, does the evidence in this case present a jury issue?
Plaintiffs urge that the trial court was without authority to direct a verdict because of the wording of Fla.R.Civ.P. 1.480(b), which is as follows:
"Reservation of Decision on Motion. When a motion for a directed verdict at the close of all of the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the reception of a verdict a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict or if a verdict was not returned, such party may move for judgment in accordance with the motion for a directed verdict within ten days after the jury has been discharged."
It is argued that because the last clause of the quoted rule provides that "... such party may move for judgment . .," therefore, the court may not act upon a reserved motion until a motion is filed. This argument is not valid. The rule is permissive. It is written to aid attorneys and is not a limitation on the power of the trial court to act in a proper case. See 6551 Collins Avenue Corp. v. Millen, 104 So.2d 337 (Fla. 1958).
Turning to the factual aspects of this case, the plaintiffs rely, for a jury issue, on the testimony of Mrs. Williams, the driver of the car in which plaintiff Gerald Dent was a passenger. Of course, plaintiffs have every right to do so because on an appeal from a directed verdict, the party moved against is entitled to have the evidence and all inferences reasonably drawn therefrom viewed in the light most favorable to the non-moving party. It has also been said that a directed verdict is rarely appropriate in an intersectional collision case. See Cunningham v. Romano, 278 So.2d 631 (Fla. 3d DCA 1973).
Mrs. Williams made a left turn from a left turn lane on a divided highway at a green light. She stopped and looked. Defendant Casale was traveling at 35 m.p.h. and saw Mrs. Williams's car entering the left turn area. The defendant did not pay particular attention to Mrs. Williams's car because she was taking a proper position. When the defendant was 50 to 75 feet away, Mrs. Williams was in a position to turn. The defendant did not see her car again until she was in front of him. Defendant's efforts to avoid a collision were unavailing.
Mrs. Williams's testimony was that she noticed the defendant's car when she went to make her turn. He was, in her expression, "way down the road" at that time.[1] *1103 The collision occurred when Mrs. Williams's car was about two-thirds of the way through the intersection. The impact was on the right rear of the Williams car.
On this evidence, the jury deadlocked. At least one member of the jury decided that the defendant was in some way, and to some extent, negligent. This is strong support for the view that reasonable men could find negligence. But we are left with the question of whether Mrs. Williams's indefinite statement that the defendant was "way down the road" is sufficient to raise a jury question of whether the defendant was negligent by being inattentive.
Under the present state of the case law on directed verdicts, we hold that the case was one for the jury. Cf. Petroleum Carrier Corporation v. Gates, 330 So.2d 751 (Fla. 1st DCA 1976); Cunningham v. Romano, 278 So.2d 631 (Fla. 3d DCA 1973); and WFTL Broadcasting Company v. Newman, 224 So.2d 359 (Fla. 4th DCA 1969).
The judgment and the order awarding costs are reversed.
NOTES
[1] (By Mr. Kubick) You saw Mr. Casale's car, didn't you?
"A. Way down the road.
"Q. You saw 
"A. Way down the road.
"Q. You saw it before you started your left-hand turn in front of the car, didn't you?
"A. The car was right down the road when I saw it.
"Q. That was Mr. Casale's car that was the vehicle that you were involved in the accident with?
"You saw it coming toward the intersection; didn't you?
"MR. ROSNER: The witness testified that she saw the car way down the road.
"THE COURT: Overruled.
"Q. (By Mr. Kubick) You saw Mr. Casale's car before this accident occurred; didn't you?
"A. Way down the road.
"Q. I just want a yes or no answer. Did you see it?
"A. Yes, down the road.
"Q. Well, actually you saw it about two car lengths from the intersection; didn't you?
"A. The car was just, like, moving.
"Q. Madam, didn't you see it two car lengths away from the intersection when you saw it?
"A. Way down the road.
"Q. Do you remember when you went to the attorney's office and gave your sworn testimony on July 1, 1975?
"A. Yes.
"Q. On page fourteen, at the bottom (reading):
`Question: the two that were already stopped eastbound on State Road Nine?
`Answer: Right. I waited till they passed and I seen it clear and this car  this man that hit me with his truck, he was about at least two car lengths down the road when I went to make my turn, and all at once  I don't know whether it speeded up or what, but just as I got in the lane to make by turn, then he struck the back of my car.'
"Do you remember that question and answer?
"A. Yes."